IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| YOLANDA SHANNELL MORRIS,<br>   *Plaintiff*, | § § § § § § | |
| v. | § § § | Case No.:<br>Jury |
| SAVASENIORCARE ADMINISTRATIVE AND CONSULTING, LLC, PLEASANT SPRINGS OPERATING COMPANY LLC, and whatever entity, if any, that at any time between January 1, 2018 and May 8, 2018 operated any business located at 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455,<br>   *Defendants*. | § § § § § § § § § § § § § | |

**COMPLAINT**

Plaintiff Yolanda Shannell Morris ("Morris") accuses the following Defendants of violating federal law: SavaSeniorCare Administrative and Consulting, LLC ("SSC"), and Pleasant Springs Operating Company LLC ("PSOC"), plus whatever entity, if any, that at any time between January 1, 2018 and May 8, 2018 operated any business located at 2003 North Edwards Avenue, in Mount Pleasant, Titus County, Texas 75455. In support, Morris shows the following:

**Nature of the Case**

1. This is an employment case. It contains claims of unlawful discrimination and retaliation.

2. Morris sues all Defendants for her discharge that took place on May 8, 2018. In

Count One, Morris contends that her discharge constituted unlawful racial discrimination in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a) ("Title VII").  In Count Two, Morris contends that her discharge constituted unlawful racial discrimination in violation of the Civil Rights Act of 1866, codified at 42 U.S.C. § 1981 ("Section 1981"). In Count Three, Morris contends that her discharge constituted unlawful retaliation in violation of Section 704(a) of Title VII. In Count Four, Morris contends that her discharge constituted unlawful retaliation in violation of Section 1981.

## Parties

3. Plaintiff Yolanda Shannel Morris ("Morris") is an individual.

   A. Morris currently resides in Mount Pleasant, Titus County, Texas.

   B. According to the records of SSC, while SSC had Morris on its payroll on May 7 and 8, 2018, Morris was residing in Mount Pleasant, Titus County, Texas.

   C. According to the records of PSOC, while PSOC had Morris on its payroll on May 7 and 8, 2018, Morris was residing in Mount Pleasant, Titus County, Texas.

   D. According to the records of SSC, on the day when it made its final, ultimate decision to discharge Morris, Morris was residing in Mount Pleasant, Titus County, Texas.

   E. According to the records of PSOC, on the day when it made its final, ultimate decision to discharge Morris, Morris was residing in Mount Pleasant, Titus County, Texas.

   F. On the day when SSC informed Morris of its decision to discharge her, Morris was residing in Mount Pleasant, Titus County, Texas.

   G. On the day when PSOC informed Morris of its decision to discharge her, Morris was residing in Mount Pleasant, Titus County, Texas.

      H.      Morris was an "employee" of SSC, as that term is defined in 42 U.S.C. § 2000e(f), starting from her date of hire there, and ending on her last day of her employment there.

      I.      Morris was an "employee" of PSOC, as that term is defined in 42 U.S.C. § 2000e(f), starting from her date of hire there, and ending on her last day of her employment there.

4.      According to the Texas Secretary of State, **SavaSeniore Administrative and Consulting, LLC** ("SSC") –

      A.      is in existence;

      B.      was formed in Delaware;

      C.      has its principal place of business – that is, the place where its officers direct, control and coordinate SSC's activities – at the following location: c/o SAVA SENIOR CARE, ONE RAVINIA DRIVE SUITE 1400, Atlanta, GA 30346;

      D.      currently has the right to transact business in Texas; and,

      E.      may be served with process by serving its **registered agent**, **CT Corporation System,** located at **1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**.

      F.      SSC was an "employer" of Morris, as that term is defined in 42 U.S.C. § 2000e(b), starting on the first day when it put Morris on its payroll, and ending on the last day when it removed Morris from its payroll.

      G.      SSC had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2017.

      H.      SSC had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2018.

      I.      In Year 2018, SSC transmitted to Morris – or, alternatively, caused to be transmitted to Morris -- an IRS Form W-2 for Year 2017 in which Morris's "EMPLOYER'S

NAME ADDRESS AND ZIP CODE" was identified follows – "SAVASENIORCARE ADMIN SRVCS LLC AGENT FOR PLEASANT SPRINGS OP CO LLC 5300 W SAM HOUSTON PKWY N STE 100 HOUSTON, TX 77041."

J.  In Year 2019, SSC transmitted to Morris – or, alternatively, caused to be transmitted to Morris -- an IRS Form W-2 for Year 2018 in which Morris's "EMPLOYER'S NAME ADDRESS AND ZIP CODE" was identified follows – "SAVASENIORCARE ADMIN SRVCS LLC AGENT FOR PLEASANT SPRINGS OP CO LLC 5300 W SAM HOUSTON PKWY N STE 100 HOUSTON, TX 77041."

5.  According to the Texas Secretary of State, **Pleasant Springs Operating Company LLC** ("PSOC") –

   A.  is in existence;

   B.  was formed in Delaware;

   C.  has its principal place of business – that is, the place where its officers direct, control and coordinate PSOC's activities – at the following location: 2003 N. Edwards Mount Pleasant, Titus County, TX  75455;

   D.  currently has the right to transact business in Texas; and,

   E.  may be served with process by serving its **registered agent**, **CT Corporation System,** located at **1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136**.

   F.  PSOC was an "employer" of Morris, as that term is defined in 42 U.S.C. § 2000e(b), starting on the first day when it put Morris on its payroll, and ending on the last day when it removed Morris from its payroll.

   G.  PSOC had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2017.

  H. PSOC had fifteen or more individuals on its payroll for each working day in each of twenty or more calendar weeks during Year 2018.

  I. In Year 2018, PSOC transmitted to Morris – or, alternatively, caused to be transmitted to Morris -- an IRS Form W-2 for Year 2017 in which Morris's "EMPLOYER'S NAME ADDRESS AND ZIP CODE" was identified follows – "SAVASENIORCARE ADMIN SRVCS LLC AGENT FOR PLEASANT SPRINGS OP CO LLC 5300 W SAM HOUSTON PKWY N STE 100 HOUSTON, TX 77041."

  J. In Year 2019, PSOC transmitted to Morris – or, alternatively, caused to be transmitted to Morris -- an IRS Form W-2 for Year 2018 in which Morris's "EMPLOYER'S NAME ADDRESS AND ZIP CODE" was identified follows – "SAVASENIORCARE ADMIN SRVCS LLC AGENT FOR PLEASANT SPRINGS OP CO LLC 5300 W SAM HOUSTON PKWY N STE 100 HOUSTON, TX 77041."

6. Although superficially distinct, "SSC" and "PSOC" constitute a "single integrated enterprise" in light of their interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control.

7. Pleading in the alternative, "SSC" and "PSOC" constitute "joint employers" for purposes of the "hybrid economic realities/common law control test."

## Jurisdiction

8. This Court has original subject matter jurisdiction over this action because Morris's claims all present federal questions. *See* 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1343(a)(4) ("civil rights").

9. This Court has personal jurisdiction, both specific and general, over SSC because SSC conducts business in Texas, Morris's claims for relief all arose in Texas, and SSC is amenable

to service by this Court.

10. This Court has personal jurisdiction, both specific and general, over PSOC because PSOC conducts business in Texas, Morris's claims for relief all arose in Texas, and PSOC is amenable to service by this Court.

**Venue**

11. Venue is proper in this judicial district and division because a substantial part of the events or omissions giving rise to Morris's claims occurred here. *See* 28 U.S.C. § 1391(b)(2).

**Material Facts**

12. According to its website, SSC describes itself as "[*o*]*ne of the largest providers of short term and long term rehabilitation and skilled nursing services in the country.*"

13. Morris is African American.

14. Morris's race is African American.

15. According to SSC's records, Morris's race is African American.

16. SSC hired Morris in October 31, 2016.

    A. Morris's job title with SSC was "Physical Therapist Assistant."

    B. SSC assigned Morris to the following location – 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455 -- and Morris stayed at that location for her entire term of employment.

        (i) This location did business as "Pleasant Springs Healthcare Center."

    C. At all times from January 1, 2018 to the end of Morris's employment, SSC assigned Morris to the "Rehab Department."

    D. At all times from January 1, 2018 to the end of Morris's employment, SSC assigned Morris to the "Rehab Department," where she reported to Mr. Mark Yu.

   E. At all times from January 1, 2018 to the end of Morris's employment, SSC assigned Morris to the "Rehab Department," where she reported to Mr. Mark Yu, Director of Rehab.

   F. At all times from January 1, 2018 to the end of Morris's employment, SSC assigned Mr. Chris Blue to the position of Facility Administrator for the location at 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455.

17. According to PSOC's records, Morris's race is African American.

18. PSOC hired Morris in August 2016.

   A. Morris's job title with PSOC was "Physical Therapist Assistant."

   B. PSOC assigned Morris to the following location – 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455 -- and Morris stayed at that location for her entire term of employment.

     (i) This location did business as "Pleasant Springs Healthcare Center."

   C. At all times from January 1, 2018 to the end of Morris's employment, SSC assigned Morris to the "Rehab Department."

   D. At all times from January 1, 2018 to the end of Morris's employment, SSC assigned Morris to the "Rehab Department," where she reported to Mr. Mark Yu.

   E. At all times from January 1, 2018 to the end of Morris's employment, SSC assigned Morris to the "Rehab Department," where she reported to Mr. Mark Yu, Director of Rehab.

   F. At all times from January 1, 2018 to the end of Morris's employment, SSC assigned Mr. Chris Blue to the position of Facility Administrator for the location at 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455.

19. SSC employed Ms. Whitney Oney at all times between January 1, 2018 and May 8, 2018.

    A. During this time, SSC assigned Oney to the location at 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455.

    B. During this time, SSC assigned Oney to the "Rehab Department."

    C. During this time, SSC assigned Morris to the "Rehab Department," where she reported to Mr. Mark Yu.

    D. During this time, SSC assigned Morris to the "Rehab Department," where she reported to Mr. Mark Yu, Director of Rehab.

    E. According to SSC's records, Oney's race is white.

20. PSOC employed Ms. Whitney Oney at all times between January 1, 2018 and May 8, 2018.

    A. During this time, PSOC assigned Oney to the location at 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455.

    B. During this time, PSOC assigned Oney to the "Rehab Department."

    C. During this time, PSOC assigned Oney to the "Rehab Department," where she reported to Mr. Mark Yu.

    D. During this time, PSOC assigned Oney to the "Rehab Department," where she reported to Mr. Mark Yu, Director of Rehab.

    E. According to PSOC's records, Oney's race is white.

21. SSC employed Ms. Cristy Wiltrout at all times between April 1, 2018 and May 8, 2018.

    A. During this time, SSC assigned Wiltrout to the location at 2003 North

Edwards Avenue, Mount Pleasant, Titus County, Texas 75455.

    B. During this time, SSC assigned Wiltrout to the "Rehab Department."

    C. During this time, SSC assigned Wiltrout to the "Rehab Department," where she reported to Mr. Mark Yu.

    D. During this time, SSC assigned Wiltrout to the "Rehab Department," where she reported to Mr. Mark Yu, Director of Rehab.

    E. According to SSC's records, Wiltrout's race is white.

  22. PSOC employed Ms. Cristy Wiltrout at all times between January 1, 2018 and May 8, 2018.

    A. During this time, PSOC assigned Wiltrout to the location at 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455.

    B. During this time, PSOC assigned Wiltrout to the "Rehab Department."

    C. During this time, PSOC assigned Wiltrout to the "Rehab Department," where she reported to Mr. Mark Yu.

    D. During this time, PSOC assigned Wiltrout to the "Rehab Department," where she reported to Mr. Mark Yu, Director of Rehab.

    E. According to PSOC's records, Wiltrout's race is white.

  23. SSC employed Ms. Cathy White at all times between January 1, 2018 and May 8, 2018.

    A. During this time, SSC assigned White to the location at 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455.

    B. During this time, SSC assigned White to the "Rehab Department."

    C. During this time, SSC assigned White to the "Rehab Department," where

she reported to Mr. Mark Yu.

      D.    During this time, SSC assigned White to the "Rehab Department," where she reported to Mr. Mark Yu, Director of Rehab.

      E.    According to SSC's records, White's race is white.

24.    PSOC employed Ms. Cathy White at all times between January 1, 2018 and May 8, 2018.

      A.    During this time, PSOC assigned White to the location at 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455.

      B.    During this time, PSOC assigned White to the "Rehab Department."

      C.    During this time, PSOC assigned White to the "Rehab Department," where she reported to Mr. Mark Yu.

      D.    During this time, PSOC assigned White to the "Rehab Department," where she reported to Mr. Mark Yu, Director of Rehab.

      E.    According to PSOC's records, White's race is white.

25.    In April 2018, inspectors for the State of Texas reviewed certain "detailed notes" on patient care that had been prepared by Olney, Wiltrout, White, and Morris.

26.    In April 2018, inspectors for the State of Texas reviewed certain "detailed notes" on patient care that had been prepared by Olney, Wiltrout, White, and Morris, after which the State launched an investigation into possible patient neglect.

      A.    After the State launched its investigation, Blue increased his scrutiny of Morris's work.

            (i)    During this same time, Blue did not increase his scrutiny of the work performed by Oney.

    (ii) During this same time, Blue did not increase his scrutiny of the work performed by Wiltrout.

    (iii) During this time, Blue did not increase his scrutiny of the work performed by White.

27. In April 2018, inspectors for the State of Texas reviewed certain "detailed notes" on patient care that had been prepared by Morris, after which the State launched an investigation into possible patient neglect. After the State launched its investigation, Blue instructed Morris to take "less detailed" notes.

   A. During this time, Blue did not instruct Oney to take "less detailed" notes.

   B. During this time, Blue did not instruct Wiltrout to take "less detailed" notes.

   C. During this time, Blue did not instruct White to take "less detailed" notes.

28. On May 2, 2018, Morris attended a meeting at the facility located at 2003 North Edwards Avenue in Mount Pleasant, Titus County, Texas 75455. The other attendees were Mark Yu, Piche Gugler, and Randy Cheeks.

   A. During this meeting, Morris was suspended.

   B. During this meeting, SSC suspended Morris.

   C. During this meeting, PSOC suspended Morris.

   D. During this meeting, Morris opposed what she reasonably believed was harsher treatment against her in comparison to the treatment of Oney, Wiltrout, and White – all of whom are white.

29. Morris was discharged.

30. Morris was discharged on May 8, 2018.

31. SSC discharged Morris.

32. SSC discharged Morris on May 8, 2018.

33. PSOC discharged Morris.

34. PSOC discharged Morris on May 8, 2018.

35. Due to the conduct of SSC and PSOC, including the foregoing, Morris has suffered economic losses. Morris will likely continue to suffer such losses in the future.

36. Due to the conduct of SSC and PSOC, including the foregoing, Morris has suffered mental anguish. Morris will likely continue to suffer such losses in the future.

### COUNT ONE:
### Violation of Title VII; Discrimination/Discharge

37. Morris re-alleges and incorporates by reference all allegations set forth in paragraphs 12 through 36.

38. Morris brings this claim against all Defendants.

39. Section 703(a) of Title VII states, "*It shall be an unlawful employment practice for an employer— (1) to … discharge any individual, …, because of such individual's race*[.]" 42 U.S.C. § 2000e-2(a).

   A. SSC violated the statute quoted in this paragraph when it discharged Morris.

   B. PSOC violated this statute quoted in this paragraph when it discharged Morris.

40. All prerequisites to the filing of this Title VII claim have been fulfilled. *First*, Morris filed a Charge of Discrimination No. 450-2019-00059 ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") within three hundred days of his discharge as required by 42 U.S.C. § 42 U.S.C. §2000e-5(e)(1). *Second*, EEOC mailed a letter to Morris titled *Dismissal and Notice of Rights* after the Charge had been on file at EEOC for more than one

hundred eighty days. This *Dismissal and Notice of Rights* letter purports to have been signed by Belinda McCallister, EEOC's Dallas District Director. Morris has filed this action within 90 days from her receipt of the *Dismissal and Notice of Rights* letter as required by 42 U.S.C. §2000e-5(f).

41. Morris seeks all relief that is available to her under Section 703(a) of Title VII. This includes but is not limited to the following categories:

    A. all wages and employment benefits, starting on the effective date of his discharge, and ending on the date when a jury renders a verdict ("back pay").

    B. reinstatement, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Morris will be made whole ("front pay").

    C. compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

    D. punitive damages, given that SSC and/or PSOC engaged in such discriminatory practices with malice or with reckless indifference to Morris's federally protected rights.

    E. all permitted equitable relief.

    F. all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

    G. a reasonable attorney's fee to the undersigned counsel as part of the costs.

    H. reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

    I. all other costs allowed by law.

## COUNT TWO:
## Violation of Section 1981; Discrimination/Discharge

42. Morris re-alleges and incorporates by reference all allegations set forth in paragraphs 12 through 36.

43. Morris brings this claim against all Defendants.

44. 42 U.S.C. 1981 ("Section 1981") reads in pertinent part as follows:

*(a)   Statement of equal rights.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.*

*(b)   "Make and enforce contracts" defined.  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.*

*(c)   Protection against impairment.  The rights protected by this section are protected against impairment by nongovernmental discrimination...*

    A.   SSC violated Section 1981 when, after having formed a "contract[]" with Morris as that word is used in subsection (a) *supra*, it discharged Morris.

    B.   PSOC violated Section 1981 when, after having formed a "contract[]" with Morris as that word is used in subsection (a) *supra*, it discharged Morris.

45. Morris seeks all relief that is available to him under Section 1981. This includes but is not limited to the following categories:

    A.   all wages and employment benefits, starting on the effective date of Morris's discharge, and ending on the date when a jury renders a verdict ("back pay").

    B.   reinstatement, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and

ending on the date when it is determined that Morris will be made whole ("front pay").

   C. compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

   D. punitive damages, given that SSC and/or PSOC engaged in such discriminatory practices with malice or with reckless indifference to Morris's federally protected rights.

   E. all permitted equitable relief.

   F. all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

   G. a reasonable attorney's fee to the undersigned counsel.

   H. reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

   I. all other costs allowed by law.

## COUNT THREE:
## Violation of Title VII; Retaliation/Discharge

46. Morris re-alleges and incorporates by reference all allegations set forth in paragraphs 12 through 36.

47. Morris brings this claim against all Defendants.

48. Section 704(a) of Title VII reads as follows: "*It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this title [42 USCS §§ 2000e – 2000e-17]"* …. 42 U.S.C. § 2000e-3(a).

   A. SSC violated the statute quoted in this paragraph when it discharged Morris.

   B. PSOC violated this statute quoted in this paragraph when it discharged Morris.

 49. All prerequisites to the filing of this Title VII claim have been fulfilled. *First*, Morris filed a Charge of Discrimination No. 450-2019-00059 ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") within three hundred days of his discharge as required by 42 U.S.C. § 42 U.S.C. §2000e-5(e)(1). *Second*, EEOC mailed a letter to Morris titled *Dismissal and Notice of Rights* after the Charge had been on file at EEOC for more than one hundred eighty days. This *Dismissal and Notice of Rights* letter purports to have been signed by Belinda McCallister, EEOC's Dallas District Director. Morris has filed this action within 90 days from her receipt of the *Dismissal and Notice of Rights* letter as required by 42 U.S.C. §2000e-5(f).

 50. Morris seeks all relief that is available to her under Section 703(a) of Title VII. This includes but is not limited to the following categories:

   A. all wages and employment benefits, starting on the effective date of his discharge, and ending on the date when a jury renders a verdict ("back pay").

   B. reinstatement, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and ending on the date when it is determined that Morris will be made whole ("front pay").

   C. compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

   D. punitive damages, given that SSC and/or PSOC engaged in such discriminatory practices with malice or with reckless indifference to Morris's federally protected rights.

    E. all permitted equitable relief.

    F. all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

    G. a reasonable attorney's fee to the undersigned counsel as part of the costs.

    H. reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

    I. all other costs allowed by law.

## COUNT FOUR:
### Violation of Section 1981; Retaliation/Discharge

 51. Morris re-alleges and incorporates by reference all allegations set forth in paragraphs 12 through 36.

 52. Morris brings this claim against all Defendants.

 53. In *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008)(7-2 decision), the Supreme Court wrote, "The question before us is whether §1981 encompasses retaliation claims. We conclude that it does."

    A. SSC violated the statute quoted in this paragraph when it discharged Morris.

    B. PSOC violated this statute quoted in this paragraph when it discharged Morris.

 54. Morris seeks all relief that is available to him under Section 1981. This includes but is not limited to the following categories:

    A. all wages and employment benefits, starting on the effective date of Morris's discharge, and ending on the date when a jury renders a verdict ("back pay").

    B. reinstatement, or, if that is found to be inappropriate, then a sum of money that is equal to all wages and benefits, starting from the date when a jury renders a verdict, and

ending on the date when it is determined that Morris will be made whole ("front pay").

    C.  compensatory damages, past and future, for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

    D.  punitive damages, given that SSC and/or PSOC engaged in such discriminatory practices with malice or with reckless indifference to Morris's federally protected rights.

    E.  all permitted equitable relief.

    F.  all interest allowed by law, *e.g.,* pre-judgment and post-judgment.

    G.  a reasonable attorney's fee to the undersigned counsel.

    H.  reimbursement of expert fees as part of the undersigned counsel's attorney's fee.

    I.  all other costs allowed by law.

### Jury Demand

55.  Morris demands a jury on all issues so triable. *See* FED. R. CIV. P. 38.

### Request for Relief

WHEREFORE, Plaintiff Yolanda Shannell Morris asks that Defendants SavaSeniorCare Administrative and Consulting, LLC ("SSC"), and Pleasant Springs Operating Company LLC ("PSOC"), plus whatever entity, if any, that at any time between January 1, 2018 and May 8, 2018 operated any business located at 2003 North Edwards Avenue, Mount Pleasant, Titus County, Texas 75455, appear and answer, and that on trial of this action Morris have final judgment against SSC and PSOC as set forth hereinabove, and for all such other and further relief to which Morris is justly entitled.

Dated: August 7, 2021

                                                  Respectfully submitted,

                                                  */s/ Wade A. Forsman*

By: _____

                                                  **Wade A. Forsman**
                                                  State Bar No. 07264257
                                                  P.O. Box 918
                                                  Sulphur Springs, TX 75483-0918
                                                  903.689.4144 Telephone-East Texas
                                                  972.499.4004 Telephone–Dallas/Fort Worth
                                                  903.689.7001 Facsimile
                                                  **wade@forsmanlaw.com**

                                                  **Attorney for Plaintiff Yolanda Shannell Morris**